City of Philadelphia, Appellant *v.* Philip Lindy, t/a Fountain View Apartments, Appellee.

Argued December 15, 1982, before Judges ROGERS, CRAIG and MACPHAIL, sitting as a panel of three.

516

*Pamela Fox,* Assistant City Solicitor, with her, *Barbara S. Gilbert,* Chief Assistant City Solicitor, for appellant.

*Jeffrey B. Albert,* with him, *Richard T. Collier, Fox, Rothschild, O'Brien & Frankel,* for appellee.

OPINION BY JUDGE CRAIG, February 2, 1983:

We here face the following question:

After a public agency's administrative decision adverse to a party has become final, as a consequence of that party's failure to pursue the procedures available for review of the decision, may the party proceed in a civil action to seek damages from the public agency on the basis that the decision was invalid?

This case involves the trespass complaint of apartment developer Lindy against the City of Philadelphia, requesting damages from the city for the alleged unlawful revocation of building permits for a 234-unit apartment complex. Lindy did not appeal those revocations to the Board of License and Inspection Review within ten days after the revocation, as provided by section 4-114 of the City Code.

The city filed an answer alleging that the revocations were lawful because Lindy, in seeking to satisfy conditions attached to the development approval, had submitted certain documents, purporting to be executed by adjoining property owners, which were

forgeries; Lindy's pleadings do not dispute the forgery allegations. In response to Lindy's claim for damages resulting from project losses and loan costs, the city also filed a counterclaim for its alleged damages, based on work done by the city in anticipation of the apartment complex.

Inexplicably, the case then lay dormant in the court of common pleas for nearly six years, until the city filed a motion to dismiss, centrally urging that

Lindy's failure to exhaust his administrative remedies precludes Lindy from pursuing his claim before this Court.

The court of common pleas, by Judge FORER, granted the city's motion to dismiss, holding that:

Plaintiff cannot ignore the administrative remedy provided by the ordinance and charge the City with consequential damages for his failure to act.

In addition, the trial court held that, although the city's counterclaim should not be deemed to be a waiver of its right to raise the issue embodied in the motion to dismiss, that very motion constituted an implicit withdrawal of the city's counterclaim, so that the court's dismissal of the complaint included, "of necessity," dismissal of the counterclaim.

First we must consider the dismissal of Lindy's trespass action.

Lindy relies upon *Feingold v. Bell of Pennsylvania*, 477 Pa. 1, 383 A.2d 791 (1978), in which a majority of the Pennsylvania Supreme Court sustained the use of an equity action for damages, as well as for injunctive relief, against the telephone company by an enterprise complaining of business losses as a result of the telephone company's alleged failure to provide satisfactory directory referral service and mobile telephone service, and alleged wrongful action in disconnecting

telephone service as a consequence of an answering device problem. In that case, the dispute had never been in the hands of the Pennsylvania Public Utility Commission. The Supreme Court held that, because the PUC's powers do not include the power to award damages for breach of contract by a public utility, the plaintiff could pursue the civil action without first pursuing or exhausting administrative remedies.

The City of Philadelphia, on the other hand, here relies upon *Elkin v. Bell Telephone Company of Pennsylvania*, 491 Pa. 123, 420 A.2d 371 (1980) in which the Pennsylvania Supreme Court affirmed the dismissal of a telephone subscriber's trespass suit against Bell for allegedly negligent long-distance and directory service. In *Elkin*, the plaintiff had also instituted the court action before pursuing any PUC remedy, but the common pleas court stayed the matter while that subscriber then pursued a complaint proceeding before the PUC, in which the PUC rendered an adjudication concluding that Bell's telephone service was adequate. Then the subscriber, without taking any exceptions to the PUC decision or appeal from it, sought to pursue the civil action. After the common pleas court had declined to dismiss that action upon Bell's motion, the Superior Court reversed, and the Supreme Court agreed with the Superior Court that the trespass action should be dismissed.

The Supreme Court held in *Elkin* that the Common Pleas Court of Montgomery County had acted properly in initially staying the suit in order to let the administrative adjudication proceed. In approving that invocation of the doctrine of primary jurisdiction, the Supreme Court stated that the controlling criterion was the complex subject matter within the agency's jurisdiction, requiring special competence with which a judge or jury would not be familiar; the Supreme Court also gave consideration to the need for uniform-

ty and consistency in agency policy and legislative intent. *Elkin*, 491 Pa. at 134-35, 420 A.2d at 377.

Remembering that the case before us involves the status of a civil action *after* the administrative determination has become *final*, we can see that the present case is parallel to the situation in *Elkin* after the PUC decision there became final by reason of the absence of any appeal. On a like basis, this case is distinguishable from *Feingold*, where no administrative determination was ever sought or obtained.

In *Elkin*, the core of the Supreme Court's unwillingness to let the plaintiff proceed with its trespass action after failing to appeal the administrative determination is embodied in the concluding statement:

We will not now permit a collateral attack on the PUC determination in the Court of Common Pleas of Montgomery County.

*Elkin*, 491 at 135, 420 A.2d at 377.

We therefore must regard *Elkin* as controlling. Perhaps fortunately, we need not struggle with the somewhat intangible question of the degree of complexity of the subject matter or the range of special competence as between administrative agency and court, because here the agency's decision-making process had already reached finality as a consequence of the expiration of the time within which the party could have exhausted potentialities for further review. This trespass action, although it seeks damages which could not be granted by any administrative agency or by any court reviewing the administrative action, nevertheless would turn upon the central question of whether the permit revocation action was lawful or unlawful. Therefore, the trespass action clearly constitutes a collateral attack upon the administrative action, a mode of attack which is plainly unacceptable when the developer has discarded, without basis, the direct means for having the permit revocations reviewed.

We note a parallel in our own decision in *Gans v. City of Philadelphia*, 43 Pa. Commonwealth Ct. 635, 403 A.2d 168 (1979) where a property owner, after failing to question a city's determination that a building should be repaired or demolished, thereafter sought damages for the loss of the demolished building, through an eminent domain action on the theory of de facto condemnation. We there held that the property owner's failure to question the city's order barred the later claim for damages which, to be successful, necessarily entailed establishing the invalidity of the order as a police power measure.

Although we here affirm the common pleas court's dismissal of the plaintiff's suit on the authority of *Elkin*, we must vacate the trial court's order insofar as it dismisses the city's counterclaim on the unsupported theory that the motion to dismiss constituted an implicit withdrawal of the counterclaim. Pa. R.C.P. No. 232(a) provides that a defendant's right to proceed with a counterclaim is not affected by a nonsuit of the plaintiff. The granting of the motion to dismiss here is analogous to a nonsuit, and we do not see why the counterclaim should not survive. In seeking to uphold the dismissal of the counterclaim, the plaintiff's brief contends that the counterclaim fails to state a cause of action, but no such demurrer is present among the issues before us for decision.

### Order

Now, February 2, 1983, the order of the Court of Common Pleas of Philadelphia County dated April 8, 1981 is affirmed insofar as it grants the City of Philadelphia's motion to dismiss the complaint of Philip B. Lindy t/a Fountain View Apartments, and that order is vacated insofar as it dismisses the counterclaim of the City of Philadelphia.